# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 12, 2010

Lyle W. Cayce
Clerk

No. 09-40116

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN FITZGERALD RICE, JR.; SARAH LYNN CORMIER,

Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of Texas

Before GARWOOD, SMITH, and CLEMENT, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

John Rice and Sarah Cormier appeal their convictions of carjacking and related offenses. They raise various claims of error and prosecutorial misconduct. We affirm.

I.

One day in December 2007, Cormier and Rice joined Aldrain Booker, Kei-

No. 09-40116

sha Guidry, Joshua Hayward, and William Staunton in search of people to rob. The group first went to a local bingo hall, where Rice and Hayward discussed robbing a woman who had just won the big prize. They all piled into Guidry's car, and Rice told Stanton, who was driving, to follow the woman home. When they arrived there, Rice retrieved his gun through the armrest and exited the vehicle. But by the time he reached the house, the garage door was almost closed, so he returned to the car, and the group drove away.

Later that night, Cormier and Rice came up with a plan to order pizza to an abandoned house and then steal the delivery man's pizza, money, and car. Cormier called the pizza restaurant but learned that they did not deliver after 9 p.m.

The group then decided to drive to a grocery store to get something to eat. When they reached the parking lot, Rice spotted an older couple, whom the group followed home. On the way, they discussed wrapping the couple in duct tape and taking their money and car. At the couple's house, Rice and Hayward exited the vehicle and ran toward their targets. As Rice and Hayward approached, the elderly man pulled out his phone and threatened to call the police. Rice and Hayward then retreated to Guidry's car.

Next, the group drove to a convenience store at a gas station where one of Booker's friends, Danial Reynolds, was working. After four members of the group entered the store, Cormier asked Reynolds whether they could rob him and later split the profits. Reynolds seemed to think she was joking and disregarded the proposal.

Finally, only a few minutes later, Amanda Weeks approached the gas station in her car, and Rice ordered Stanton to park across the street so they could observe Weeks. After Weeks used her debit card to pay for gas, Rice told Stanton to follow her home so they could steal her money and car. While the car followed Weeks, Rice once again retrieved his gun from behind the armrest.

2

No. 09-40116

When Weeks arrived at her residence and opened her car door, she saw a man, later identified as Rice, walk up and point a gun at her head. He told her to get into the passenger seat, then shoved her into it. Rice drove Weeks to a nearby ATM and ordered her to switch seats and withdraw as much money as possible. He also told her not to do anything stupid and that he had "done this before." Weeks withdrew $200 and gave it to Rice.

Rice drove to a nearby credit union and told Weeks that he was keeping her car to wipe off fingerprints. He ordered her out of the car, told her to lie on the ground until he left, and drove away.

Throughout the incident, Stanton, Cormier, Booker, Hayward, and Guidry followed Rice and Weeks in Guidry's car. After Rice dropped off Weeks, the rest of the group stopped in front of him at an underpass. Rice gave Cormier $20, and Booker got in Weeks's car with Rice. They proceeded to take her car to an abandoned house, where the group stole various items from the car and wiped off fingerprints. When they returned to Guidry's trailer, Rice took the gun inside, and Booker hid it under the sofa cushions.

After reviewing videotape from the gas station, police officers went to Guidry's trailer. When they entered, one officer observed Rice and Hayward pushing down into the couch cushions. He ordered them to stand up, and the other officers soon discovered the gun used to rob Weeks the night before.

Booker, Guidry, and Stanton gave written statements to the police regarding their involvement in the incident. They all indicated that Rice held the gun to Weeks's head and took her car and money. Cormier stated that she remembered visiting the gas station with the others but got tired of waiting and slept through the entire incident.

3

No. 09-40116

II.

A.

Rice, Cormier, Hayward, Booker, Stanton, and Guidry were charged with conspiracy to commit carjacking in violation of 18 U.S.C. § 371, carjacking and aiding and abetting a carjacking in violation of 18 U.S.C. §§ 2 and 2119(1), and brandishing and aiding and abetting the brandishing of a firearm in relation to a carjacking in violation of 18 U.S.C. §§ 2 and 924(c)(1). Rice was also charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Before the trial of Rice and Cormier, the government gave notice of its intent to introduce evidence of Rice's extrinsic crimes, wrongs, or bad acts under Federal Rule of Evidence 404(b). Those other acts included (1) a robbery he committed in August 2002; (2) a robbery he committed in October 2002 at a Domino's Pizza restaurant, for which he was sentenced to fifteen years' imprisonment; and (3) a robbery he committed in July 2007, at a seafood restaurant, for which a trial was pending in state court.

After briefing, the district court ruled that it would admit evidence of those acts for the purpose of proving intent. It also found that the government's evidence of the several uncharged attempted robberies during the night of the charged offenses was admissible as intrinsic evidence.

Also before trial, Rice moved to sever the charge of being a felon in possession of a firearm. He requested that the court conduct a separate trial on that count or bifurcate his trial. The district court denied that motion.

Several days later, Rice's counsel withdrew at Rice's request, and the district court allowed Rice to proceed *pro se* with appointed counsel as standby. At a pretrial hearing, Weeks heard Rice speak and informed the prosecutor that she could identity his voice as belonging to the person who carjacked her.

The prosecution then informed Rice and the court of its intent to introduce Weeks's voice identification. Rice unsuccessfully moved to suppress that evi-

4

dence. The court then allowed Rice to cross-examine Weeks regarding her recollection of the carjacking. After cross-examination, the district court reconsidered Rice's motion to suppress and denied it once again.

Shortly before trial, the prosecutor offered Cormier a plea agreement that was contingent on Rice's making a joint plea. Although Cormier had rejected a plea offer, she indicated her wish to accept the new terms, but Rice was not willing to plead guilty. Consequently, Cormier was not able to take the government's offer.

At trial, the government offered the testimony of Detective Alton Baise. The prosecutor asked Baise whether he believed Cormier's statement that she slept through the incident. He indicated that he did not believe her, and Cormier made no objection. The government then offered testimony from Weeks, Reynolds, and the four other co-conspirators.

During closing arguments, the prosecutor reminded the jury of Weeks's testimony that her assailant said he had "done this before." The prosecutor then suggested that, because Rice was the only member of the group who had previously been convicted of robbery, the assailant's statement helped to prove that Rice was the one holding the gun to Weeks's head. There was no objection.

The jury convicted Rice and Cormier on all counts. The court denied Rice's motion for a new trial.

## B.

On appeal, Rice argues that (1) the government committed prosecutorial misconduct by suggesting that the jury could consider his previous robbery convictions to prove identity; (2) the district court improperly admitted extrinsic evidence of those robberies to prove intent; (3) the court improperly admitted evidence of other offenses leading up to the carjacking as intrinsic to the charged crimes; (4) the court erroneously denied Rice's motion to sever the felon-in-pos-

session charge; (5) the government violated *Brady v. Maryland* by failing to provide Rice with evidence of a witness's previous convictions; (6) the court erred in admitting voice identification evidence from Weeks; and (7) the court erred in denying a motion for a mistrial on the basis of Weeks's purportedly perjured testimony.  Cormier contends that (1) the district court erred in allowing Baise to give his opinion of her truthfulness; and (2) the government committed prosecutorial misconduct by offering her a plea deal contingent on Rice's joint plea.

## III.

We review a district court's response to allegations of prosecutorial misconduct for abuse of discretion, for which a defendant must show that (1) the prosecutor made an improper remark and (2) the remark affected his substantial rights.  *See United States v. Gracia*, 522 F.3d 597, 600 n.2 (5th Cir. 2008).  We also apply an abuse-of-discretion standard to evidentiary rulings, *United States v. Ragsdale*, 426 F.3d 765, 774 (5th Cir. 2005), to the denial of a motion for severance, *United States v. Holloway*, 1 F.3d 307, 310 (5th Cir. 1993), and to the denial of a motion for new trial on the basis of perjury, *Johnson v. Offshore Exploration, Inc.*, 845 F.2d 1347, 1357-59 (5th Cir. 1988).  Whether identification evidence comports with due process is a mixed question of law and fact that we review *de novo*.  *United States v. Honer*, 225 F.3d 549, 552 (5th Cir. 2000).

Where an error is not contemporaneously objected to at trial, however, we review only for plain error.  *United States v. Gallardo-Trapero*, 185 F.3d 307, 321 (5th Cir. 1999).  To meet that more stringent standard, a defendant must demonstrate that (1) there was error, defined as a deviation from a legal rule; (2) it was plain, defined as obvious; and (3) it affected his substantial rights, defined as prejudicially affecting the outcome of the trial.  *Id*. at 322.  Reversible plain error is that which seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id*.

No. 09-40116

IV.

Rice raises seven issues on appeal, Cormier two. We first address the claims made by Rice and then those made by Cormier, following the order in which the arguments are presented.

A.

1.

Rice claims the government committed prosecutorial misconduct by suggesting that the jury consider his previous robbery convictions for the purpose of identification. There is no reversible error.

In accordance with Federal Rule of Evidence 404(b), the government gave Rice notice of its intent to introduce extrinsic evidence of his previous convictions. At a rule 404(b) hearing, the government argued that Rice's robbery convictions were admissible to prove that he acted with the legally-required level of intent and that he was the person who held the gun to Weeks's head. Over Rice's objection, the district court ruled the convictions admissible "for the limited purposes of determining the intent exception under 404(b)." The court decided, however, that the convictions were not admissible to prove the identity of the carjacker, because they were not sufficiently similar to the charged crimes to qualify for the identity exception under rule 404(b).

During closing arguments, the prosecutor began commenting on how the jury could identify Rice as the carjacker, then stated,

> And another thing I want you to remember, ladies and gentleman, is a very important statement that was made during this carjacking was—by the person who did hold this gun to Ms. Weeks' head was "I've done this before."
>
> You heard testimony from four other co-defendants. Nobody else has been convicted of a robbery. No other evidence of any other person has ever held a gun to anybody's head, but this man sitting

No. 09-40116

right here.

> Ladies and gentlemen of the jury, I submit to you that that indicates and supports Ms. Weeks' testimony that John Fitzgerald Rice, Jr. is the person who held her at gunpoint.

During its rebuttal closing argument, the government returned to the same point:

> Ladies and gentlemen, there were––you heard that the defendant was convicted of some crimes. You can use those crimes, as [the other prosecutor] discussed with you, to decide the robber was the only one who had done this before, committed robberies before. The defendant was the only one there is any evidence of committing any other robbery.

Rice argues that those statements exceeded the limited purpose for which evidence of his previous robberies was admitted and amounts to prosecutorial misconduct that affects his substantial rights.

Rice's pre-trial objection was not sufficient to preserve the claim of prosecutorial misconduct. To preserve an argument for appeal, an objection must be contemporaneous to the alleged error. *United States v. Mares*, 402 F.3d 511, 515 (5th Cir. 2005). Rice made no objection to the prosecutor's comments during either the closing argument or rebuttal. Therefore, we review only for plain error.

Rice has demonstrated that the prosecutor's comments regarding the use of extrinsic evidence to prove identity were error. In the first statement quoted above, the prosecutor argued that Rice was the only one who had been convicted of robbery, so the assailant's statement that he had "done this before" shows that Rice "is the person who held [Weeks] at gunpoint." During the government's rebuttal, the prosecutor told the jury that it could use Rice's previous convictions to decide whether the robber in the present case was the only one in the group who had committed robberies before. Given that the court had specifically excluded identity as a proper purpose for introducing extrinsic evidence of the previous robberies, the prosecutor's suggestion that those robberies help to prove

8

No. 09-40116

that Rice was the carjacker constituted trial error.

Even assuming *arguendo* that that error was plain, however, Rice cannot show that the remarks affected his substantial rights. Although the comments were erroneous, they were minimal and harmless in the context of the entire trial. The statements occupy only a few lines in a record that spans several thousand pages. More importantly, the prosecution presented overwhelming evidence that Rice was the one who carjacked Weeks, including consistent statements and testimony from his accomplices, testimony from the lead police investigator, and voice identification by the victim. There is nothing near a reasonable possibility that, without the prosecutor's improper statements, Rice would have been acquitted of any charge. Therefore, the claim of prosecutorial misconduct does not survive plain error review.

2.

Rice argues that the district court abused its discretion in admitting extrinsic evidence of his previous robberies for the purpose of proving intent. There is no reversible error.

Rule 404(b) governs the admissibility of evidence of prior crimes or bad acts:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b). In *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc), this court laid out the two-step test for admission of extrinsic

No. 09-40116

evidence of prior offenses or other misconduct under rule 404(b). "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." *Id.*

Rice claims that his previous robberies were not sufficiently similar to the charged crimes to be relevant and were too remote in time to be probative of his guilt. Even if we were to agree that the district court abused its discretion in admitting the extrinsic evidence, Rice cannot show that his substantial rights were prejudiced. As noted above, the prosecution presented overwhelming evidence of his guilt on all charges. Because he suffered no prejudice from the admission of extrinsic evidence, any error under rule 404(b) was harmless and does not require reversal.[1]

3.

Rice contends the district court erred in admitting evidence of the several unindicted offenses he and his co-conspirators committed on the night of the carjacking. Specifically, the government introduced evidence that the group (1) attempted to rob a woman who had just won a prize playing bingo; (2) tried to rob a pizza delivery man; (3) attempted to rob an elderly couple Rice spotted at a grocery store; and (4) sought to rob a convenience store. The court found that evidence of those offenses helped to explain how the conspiracy came together, placed the charged crimes in context, and completed the story behind the criminal activity. The court therefore allowed the prosecution to present that evidence, holding that those offenses were "intrinsic" to the charged crimes.

---

[1] *See United States v. Gutierrez-Farias*, 294 F.3d 657, 663-64 (5th Cir. 2002) (stating that abuse of discretion in admitting evidence does not require reversal where there is no reasonable possibility that the improperly admitted evidence contributed to the conviction).

No. 09-40116

To determine whether "other acts" evidence was erroneously admitted, we must first decide whether the evidence was intrinsic or extrinsic. "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). Intrinsic evidence is admissible to "complete the story of the crime by proving the immediate context of events in time and place," *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996), and to "evaluate all of the circumstances under which the defendant acted," *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989). Intrinsic evidence does not implicate rule 404(b), and "consideration of its admissibility pursuant to [that rule] is unnecessary." *United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir. 1994).

Our discussion in *Coleman*, 78 F.3d at 156, is particularly instructive as to whether the district court properly categorized the other offenses leading up to the carjacking as "intrinsic." In that case, the government offered evidence that the defendants had attempted to carjack two luxury cars earlier in the day before eventually carjacking a Mercedes. *Id*. The court found that evidence to be "intrinsic," because it "helped place the entire events of the evening in context." *Id*.

*Coleman*'s reasoning applies equally to this case. Rice's four unsuccessful robbery attempts and the carjacking of Weeks occurred within a few hours of each other and involved the same group of co-conspirators. Presentation of those previous attempts helped the government to paint the picture of a group committed to robbing someone that night and to explain how and why they decided to victimize Weeks. Evidence of the other acts was intrinsic, because it allowed the government to tell the whole story of a unified criminal episode. The court did not abuse its discretion.

No. 09-40116

4.

Rice posits that the district court abused its discretion in denying his motion to sever the charge of unlawful possession of a firearm by a convicted felon. The district court correctly found, however, that joinder of his charges was appropriate under Federal Rule of Criminal Procedure 8(a) and that severance was not required under Federal Rule of Criminal Procedure 14(a).

Rule 8(a) provides that a defendant may be charged in a single indictment for two or more offenses if they (1) are of the same or similar character; (2) are based on the same act or transaction; or (3) are connected with or constitute parts of a common scheme or plan. FED. R. CRIM. P. 8(a). Once it is determined that joinder is proper, the district court must decide whether it causes sufficient prejudice to require severance under rule 14(a). Severance is required only in cases of "compelling prejudice." *United States v. McIntosh*, 655 F.2d 80, 84 (5th Cir. Unit A Sept. 1981).

All of the charged offenses, including being a felon in possession of a firearm, were based on the same criminal episode, so joinder was proper under rule 8(a). In addition, Rice fails to show specific and compelling prejudice that would warrant reversal. Given the overwhelming evidence of his guilt, it is unlikely that the felon-in-possession charge had any effect on the jury's evaluation of the other charges. Moreover, the judge gave a detailed limiting instruction to minimize the chance of improper consideration of his previous convictions. Such instructions are generally "sufficient to prevent the threat of prejudice resulting from unsevered trials." *United States v. Massey*, 827 F.2d 995, 1005 (5th Cir. 1987). Therefore, the court did not abuse its discretion in denying a severance.

5.

Rice argues that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose Booker's prior juvenile adjudications and adult con-

No. 09-40116

victions. Ordinarily, we review *Brady* questions *de novo. United States v. Runyan*, 290 F.3d 223, 245 (5th Cir. 2002). *Brady* claims, however, "present fact-based judgments that cannot be adequately first made on appellate review. That is why *Brady* challenges must be brought to the district court's attention, winnowed by the trial judge, and made part of the record through a motion for new trial." *United States v. Gonzales*, 436 F.3d 560, 580 (5th Cir. 2006). Rice did not call upon the district court to decide whether the government had violated *Brady*, nor did he move to reopen the verdict. Because he never properly raised any *Brady* issues in the district court, we decline to review those issues on appeal.

6.

Rice avers that Weeks's voice identification testimony violated due process.[2] For a particular identification to violate due process, it must be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Roper v. Beto*, 454 F.2d 499, 502 (5th Cir. 1972) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

Several factors support the district court's finding that Weeks's identification was reliable. First, she demonstrated a high level of certainty regarding her identification. Both before and during trial, she expressed no doubt that Rice's voice was identical to the carjacker's. Second, the evidence showed Weeks was paying close attention to the perpetrator's voice during the crime. She testified that she responded immediately to his verbal commands and was able to describe in detail his distinctive way of speaking. Finally, although eight months elapsed between the incident and the identification, the district court correctly

---

[2] Rice did not raise an objection based on Federal Rule of Evidence 901(b)(5) in the district court, and his brief on appeal does not sufficiently raise the issue so as to warrant our review for plain error. *See* FED. R. APP. P. 28(a)(9)(A) (requiring that appellant's brief contain his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). Accordingly, we address only Rice's due process claim.

13

found that, given Weeks's specific and vivid recollections, the passage of time did not give rise to a substantial likelihood of misidentification. Therefore, Weeks's testimony did not violate due process.[3]

7.

Rice alleges that the district court erred in denying his motion for a new trial on the basis of Weeks's purportedly perjured testimony. During cross-examination, Rice questioned Weeks about a photo lineup she viewed at the police station after the incident. Rice asked Weeks whether she recognized the perpetrator in the picture at the station, and she responded, "Yes, but I don't believe it was documented." The next morning, Rice unsuccessfully requested a mistrial on the ground that Weeks had committed perjury, depriving him of a fair trial.

Rice has a plausible argument that Weeks, whether intentionally or not, made false statements on the witness stand. She stated that, at the time of the lineup, she was able to identify the perpetrator in the picture. Sergeant Kevin White, however, testified that Weeks was unable to make a positive identification of Rice at that time. Although Weeks insisted that she had made the identification, the remainder of her testimony indicates that she was never able to get a good look at the perpetrator's face.

Citing *United States v. Agurs*, 427 U.S. 97 (1976), Rice claims that his conviction is based on perjury and must be reversed. The *Agurs* Court, however, distinguished between cases in which prosecutors acted in good faith and those in which "a conviction [was] obtained by the knowing use of perjured testimony." *Id.* at 103. The Court held that only the latter situation constitutes prosecutorial misconduct and that the resulting conviction must be set aside if there is a reasonable likelihood that the false testimony could have affected the judgment of

_____

[3] *See, e.g.*, *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972) (analyzing totality of the circumstances to evaluate due process concerns raised by identification testimony).

14

No. 09-40116

the jury. *Id*. at 103-04.

Just as in *Agurs*, there is no evidence that the prosecution knowingly presented perjured testimony. Weeks's allegedly perjured statements were not elicited by the government but instead came in response to Rice's cross-examination. Further, those statements conflicted with the case the prosecution was attempting to build, and their only likely effect was to undermine Weeks's credibility. In any event, given the other overwhelming evidence of guilt, it is highly unlikely that Weeks's misstatements had any effect on the verdict. The district court did not abuse its discretion in denying a new trial.

## B.

### 1.

Cormier's first claim is that the district court erred in allowing Baise to give his opinion of her truthfulness. At the end of the government's direct examination of Baise, the prosecutor asked whether he had advised Cormier to get an attorney because he did not believe her statement that she slept through the incident. Baise answered in the affirmative. Cormier made no objection at trial and now argues that the court should have excluded that answer.

As an initial matter, the record indicates that Baise's response was not an attempt to offer his opinion of Cormier's truthfulness. Instead, it seems he was merely explaining why he had advised her to get an attorney. Cormier did not maintain at trial that she slept through the carjacking and therefore the prosecutor had no need to undermine her previous account of the event. Understood in proper context, the challenged comment was not opinion testimony, and its admission does not mandate a mistrial.

Even assuming (along with both parties), however, that Baise was offering his opinion as to Cormier's truthfulness, the failure to exclude that opinion was not plain error. There is no reasonable possibility that Baise's fleeting response

15

had any effect on the verdict.

2.

Cormier claims that the government engaged in prosecutorial misconduct by offering her a plea deal contingent on Rice's joint plea. Cormier expressed a willingness to accept the deal, but Rice refused to plead guilty. The prosecutor declined to offer Cormier the same terms for an individual plea, and the case went to trial. Although she made no objection in the district court, she now claims that the government's offer of a joint plea bargain violated due process.

It is well established that there is no constitutional right to plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). It follows that defendants do not have a right to plea bargain individually. Cormier offers no reason why the government should be prohibited from conditioning a plea offer on a joint plea, and she had no right to accept only her portion of the government's offer. Moreover, contrary to her suggestions, the government did not "coerce" her into standing trial––she had already rejected a plea offer and remained perfectly free to plead guilty to the crimes as charged. Because the government's offer of a joint plea was not prosecutorial misconduct, Cormier's second claim also fails on the first prong of plain error review.

Rice and Cormier demonstrate no reversible error. The judgments of conviction are therefore AFFIRMED.