# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 2, 2010

No. 08-41058

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CHERYL KAY BROWN, also known as Cheryl Goodpaster Brown; THOMAS PAUL RAMIREZ,

Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:07-CR-77

Before KING, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM:[*]

Thomas Paul Ramirez and Cheryl Kay Brown were jointly tried and convicted, by a jury, for conspiring to possess, steal, or receive stolen mail matter in violation of 18 U.S.C. § 371, and were each sentenced to five years' imprisonment. On appeal, Ramirez challenges his conviction and sentence, and Brown challenges her conviction. For the following reasons, we AFFIRM the judgment of conviction and sentence for each defendant.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-41058

## I. BACKGROUND

Ramirez and Brown, along with fourteen coconspirators, were charged in a ten-count indictment, which alleged that they were participants in a conspiracy to steal mail. The Government alleged that the coconspirators would use stolen financial and personal information from the mail to purchase merchandise and gift cards, which they would later trade for drugs, typically methamphetamine, or cash. As one coconspirator succinctly summarized at trial, the coconspirators were united by "mail, meth, and theft." Ramirez and Brown were each charged with one count of conspiracy to possess, steal, or receive stolen mail matter in violation of 18 U.S.C. § 371, and Brown was further charged with three counts of possession, theft, or receipt of stolen mail matter in violation of 18 U.S.C. § 1708. Both Ramirez and Brown pleaded not guilty to these charges and proceeded to trial.

During the joint trial, several coconspirators testified regarding the conspiracy's objectives and operation. Regarding Ramirez, the testimony indicated that he had stolen mail, transported stolen mail, sorted through stolen mail, purchased items using credit cards stolen from the mail, and passed fraudulent checks using information and documents obtained from the mail. Concerning Brown, the Government presented evidence showing that, on the night of her arrest, she and three other coconspirators had been stealing mail and were driving a pickup truck containing two trash bags of mail. Further, the Government offered testimony that Brown had sorted stolen mail both at her house and at a game room that she managed.

At both the close of the Government's case and the close of all evidence, Ramirez and Brown moved for judgments of acquittal, which the district court denied. The case was submitted to the jury, which found Ramirez and Brown guilty on the conspiracy charge, but found Brown not guilty on the possession of stolen mail charges. A Presentence Investigation Report (PSR) was prepared for

No. 08-41058

each defendant, calculating a 151–188 month United States Sentencing Guidelines (the "Guidelines") range for Ramirez and a 78–97 month Guidelines range for Brown. However, because the statutory maximum term of imprisonment for the defendants' convictions was five years, the recommended Guidelines ranges were reduced to 60 months. The district court sentenced each defendant to 60 months' imprisonment and three years of supervised release. Each defendant timely appealed.

## II. DISCUSSION

### A. Thomas Ramirez

On appeal, Ramirez argues that (1) the district court erred in denying his motion to suppress certain statements he made to investigators, (2) the evidence presented at trial was insufficient to support his conviction, and (3) the district court applied the wrong burden of proof at sentencing. We address each in turn.

*1. Whether the district court erred in denying Ramirez's motion to suppress.*

While Ramirez was being transported to court for his initial hearing, he initiated a conversation with postal inspectors, waived his *Miranda* rights, and made a number of self-incriminating statements. Before trial, Ramirez moved to suppress these statements, arguing that his waiver of *Miranda* rights had not been "voluntary" because he was "not cogent" at the time due to back pain and medication for that pain. At the suppression hearing, Ramirez's theory changed somewhat: specifically, it was the lack of pain medication, and the resulting pain, that rendered his waiver involuntary. Following the suppression hearing, the district court, adopting the recommendation of the magistrate judge, denied Ramirez's motion, finding that Ramirez made a knowing and voluntary waiver of his *Miranda* rights and that he was not coerced in waiving those rights.

On appeal, Ramirez argues that, at the time he made the statements, he was handcuffed in an uncomfortable position, the inspectors knew that he was in pain, and the inspectors knew that an attorney would shortly be present at

3

his initial hearing to assist him. As such, Ramirez urges that his waiver of *Miranda* rights was involuntary and that the district court erred in failing to suppress his statements. We disagree.

"[A] district court's determination regarding the validity of a defendant's waiver of his *Miranda* rights is a question of law reviewed de novo, but this court accepts the factual conclusions underlying the district court's legal determination unless they are clearly erroneous." *United States v. Cardenas*, 410 F.3d 287, 292 (5th Cir. 2005) (quotation marks omitted).

> The inquiry whether a valid waiver has occurred has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Id.* at 293 (quotation marks omitted). "The voluntariness determination is made on a case-by-case basis and is viewed under the totality of the circumstances surrounding the interrogation." *Id.*

The record here provides ample support for the district court's conclusion that Ramirez voluntarily waived his *Miranda* rights without coercion and with knowledge of his rights. Inspectors transporting Ramirez testified that he was cognizant of, and understood, what the agents were saying; was not babbling; initiated conversation with the agents; and specifically understood his *Miranda* rights. Further, the minutes of Ramirez's initial appearance indicate that he was "physically and mentally able, ready [to proceed]"; he testified under oath, admitting that he understood what was going on; and his counsel thought that "he appear[ed] to understand what's going on and . . . that he [wa]s competent." Moreover, Ramirez does not point to any evidence that investigators in any way coerced his waiver of *Miranda* rights. Instead, the record indicates that, though Ramirez told the inspectors he was in some pain, the inspectors did nothing to

No. 08-41058

cause or aggravate this pain; standard transportation and custody procedures were followed; and Ramirez first initiated discussion with the inspectors concerning his activities. *See id.* at 295 (indicating that handcuffing suspects is standard police procedure which is not coercive). In sum, given the circumstances here, we find no error in the district court's conclusion that Ramirez's waiver of his *Miranda* rights was knowing, voluntary, and uncoerced. *See id.* at 297. The district court properly denied Ramirez's motion to suppress.

*2. Whether sufficient evidence supports Ramirez's conviction.*

Ramirez next argues that the only evidence presented linking him to the conspiracy was the testimony of his coconspirators and that this testimony "was so consistently unreliable" so as to be insufficient to support his conviction. We are unpersuaded.

Because Ramirez moved for acquittal, we ask "whether the evidence is sufficient by viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict and determining whether a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *United States v. Valdez*, 453 F.3d 252, 256 (5th Cir. 2006) (quotation marks omitted). "It is not necessary that the evidence exclude every rational hypothesis of innocence or be wholly inconsistent with every conclusion except guilt, provided a reasonable trier of fact could find the evidence establishes guilt beyond a reasonable doubt." *Id.* (quotation marks omitted).

Ramirez's arguments challenging the credibility and weight of the coconspirators' testimony are unpersuasive. The sufficiency of the evidence standard gives "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord United States v. Casillas*, 20 F.3d 600, 602 (5th Cir. 1994) ("The jury is solely responsible for determining the weight and credibility of the

5

evidence; this court will not substitute its own determination of credibility for that of the jury."). Further, Ramirez's argument that little direct evidence implicates his involvement in the conspiracy also fails to persuade. *See United States v. Garcia Abrego*, 141 F.3d 142, 155 (5th Cir. 1998) ("Circumstantial evidence may establish the existence of a conspiracy, as well as an individual's voluntary participation in it, and circumstances altogether inconclusive, if separately considered, may, by their number and joint operation . . . be sufficient to constitute conclusive proof." (quotation marks and alteration omitted)). Here, as Ramirez admits, the Government did present evidence that linked him to the conspiracy. Sufficient evidence supports the jury's conviction, and we find no error on this issue.

### 3. *Whether the district court erred at sentencing.*

Finally, Ramirez argues that the district court "should have used a higher burden of proof at sentencing . . . because the weak evidence of intended loss resulted in a drastically disproportionate effect on his sentence." Specifically, Ramirez argues that his offense level should not have been increased because only a fraction of the actual and intended loss to victims were attributable to him. Again, we are unpersuaded.

"[A] district court's interpretation or application of the . . . Guidelines is reviewed de novo, and its factual findings are reviewed for clear error. There is no clear error if the district court's finding is plausible in light of the record as a whole." *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (alteration omitted). If the sentencing decision is procedurally sound, we consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. *Id.*

Though we have recognized that a higher standard of proof may be necessary "when a finding of a particular fact relevant to sentencing dramatically alters the sentencing options of the court to the disadvantage of the

defendant, *United States v. Mergerson*, 4 F.3d 337, 343 (5th Cir. 1993), we have never actually adopted this "tail wags the dog" doctrine, *see id.* at 344; *accord United States v. Harper*, 448 F.3d 732, 734 n.1 (5th Cir. 2006).  But even if we were to assume, *arguendo*, that the doctrine exists in this circuit, we would not apply it here.  Even without any enhancements for intended or actual loss, Ramirez still faced a sentence of two to three years;  Ramirez eventually was sentenced to the statutory maximum of five years' imprisonment.  Thus, though the intended loss calculation led to a much larger Guidelines range, the statutory maximum term of imprisonment capped the sentence that Ramirez faced.  As such, we cannot say that the increase from a sentence of two to three years to a five year sentence was so dramatic as to require a higher standard of proof.  *See Mergerson*, 4 F.3d at 344 (no higher standard of proof required for increase in recommended sentence from 30 years to life to mandatory life imprisonment); *United States v. Carreon*, 11 F.3d 1225, 1240 (5th Cir. 1994) (no higher standard of proof required for increase in recommended sentence from 63–78 months' imprisonment to 235 months' imprisonment).

Further, we note that the PSR explained, in detail, the basis for both its intended and actual loss calculations.  Given the nature of the conspiracy here and the detail of the PSR, we cannot say that the enhancements based on the PSR's loss calculations were erroneous.  *See United States v. Harris*, 597 F.3d 242, 259 (5th Cir. 2010) ("[A] sentencing court may infer intent to inflict a loss equal to the face value of property [including credit card limits] based on the fact that the defendant recklessly jeopardized that property during the commission of his crime.  That a defendant recklessly jeopardized property that he obtained fraudulently may be reasonably supported by a finding that he transferred it to a third party whom he did not control." (citation omitted)).  In sum, we find no error in Ramirez's sentence.

**B.  Cheryl Kay Brown**

Brown's sole issue on appeal is whether the district court erred in allowing testimony about her and her coconspirators' drug use. Specifically, Brown argues that the testimony concerning drug use was "extrinsic" to the stolen mail conspiracy because the mail theft could have occurred without drug use. As such, she urges that this testimony improperly characterized her as a "drug dealer and a person who traded stolen property for drugs" and was thus unduly prejudicial. We find no error on this issue.

"To determine whether 'other acts' evidence was erroneously admitted, we must first decide whether the evidence was intrinsic or extrinsic." *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010). "Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *Id.* (quotation marks omitted). "Intrinsic evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place, and to evaluate all of the circumstances under which the defendant acted." *Id.* "Intrinsic evidence does not implicate [Federal Rule of Evidence] 404(b), and consideration of its admissibility pursuant to that rule is unnecessary." *Id.* (citation, alterations, and quotation marks omitted).

Here, the Government's presentation of drug use evidence helped "paint the picture," *id.*, of the relationship between the coconspirators and the objectives of the conspiracy by showing that the conspiracy's impetus was the desire to obtain funds to purchase drugs. *See, e.g.*, *id.* (presentation of previous robbery attempts helped the Government to show the conspiracy's objectives and mode of operations); *United States v. Royal*, 972 F.2d 643, 647–48 (5th Cir. 1992) (evidence of prior drug convictions not extrinsic in a drug conspiracy conviction because "it allowed the jury to understand the nature of the relationship between the [coconspirators] and evaluate whether it was likely that the

No. 08-41058

[d]efendant[s] would have conspired"). As such, the drug use evidence presented here was "intrinsic," and we discern no error on this issue.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of conviction and sentence for each defendant.

AFFIRMED.