J-S45020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ADAM BUTLER | |
| Appellant | No. 2225 EDA 2016 |

Appeal from the Judgment of Sentence October 19, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001557-2015
CP-51-CR-0001558-2015

BEFORE:  GANTMAN, P.J., PANELLA, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.          **FILED SEPTEMBER 06, 2017**

Appellant, Adam Butler, appeals *nunc pro tunc* from the judgment of sentence imposed on October 19, 2015, in the Court of Common Pleas of Philadelphia County. On appeal, Butler challenges the sufficiency of the evidence to sustain his conviction for disorderly conduct, 18 Pa.C.S.A. § 5503(a)(3), and, for the first time on appeal, raises the claim that the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963), in waiting until almost the end of trial to hand over two police reports. We find the Commonwealth presented sufficient evidence to sustain the conviction and the **Brady** claim waived.

_____

[*] Retired Senior Judge assigned to the Superior Court.

While the passenger in a vehicle that was the subject of a lawful traffic stop, Butler needed to be removed from the car. Upon his removal, he threw a temper tantrum in front of a boisterous crowd of onlookers, yelling "[g]et the eff [*i.e.*, fuck] off of me." His tantrum, described in detail below, led to his conviction, after a bench trial, of disorderly conduct; his threatening of the officers, described in footnote three below, led to his conviction for terroristic threats. The trial court imposed a sentence of 18 to 36 months for the terroristic threats conviction and to no further penalty for the disorderly conduct conviction.

Butler first argues that the Commonwealth presented insufficient evidence to sustain his conviction for disorderly conduct. In considering this claim,

> we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Critically important, we must draw all reasonable inferences from the evidence in favor of the Commonwealth as the verdict-winner. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. Of course, the evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented.
>
> The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. It is improper for this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. Additionally, the entire

record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal citations and quotation marks omitted).

Butler's argument focuses almost exclusively on his contention that the officers did not testify credibly and that a video of the incident contradicts their testimony. **See** Appellant's Brief, at 11-13.[1] As he succinctly puts it, "whether the evidence was sufficient to sustain the convictions in this matter is directly related to the credibility of the officers." **Id**., at 12. But it is not. This is a challenge not to the *sufficiency* of the evidence, but to its *weight*. **See**, **e.g.**, **Commonwealth v. Wilson**, 825 A.2d 710, 713-714 (Pa. Super. 2003) ("A sufficiency of the evidence review, however, does not include an assessment of the credibility of the testimony offered by the Commonwealth.") By making this argument, Butler "has blurred the concepts of weight and sufficiency of the evidence." **Id**., at 714.

---

[1] The video is not in the certified record. It was Butler's responsibility to ensure that the certified record contains all the items necessary to review his claims. **See**, **e.g.**, **Commonwealth v. Kleinicke**, 895 A.2d 562, 575 (Pa. Super. 2006) (*en banc*). "When a claim is dependent on materials not provided in the certified record, that claim is considered waived." **Commonwealth v. Petroll**, 696 A.2d 817, 836 (Pa. Super. 1997) (citation omitted). In any event, as explained in this decision, the video goes to the weight, not the sufficiency of the evidence. And it bears mention that the trial court, sitting as the fact-finder, "did not find the video to contradict the material aspects of the officers' testimony." Trial Court Opinion, filed 12/16/16, at 8.

However, Butler does present an argument, albeit buried in his discussion of credibility, that the officers "testified baldly that he uttered obscenities, but it is admitted that they do not remember what he said." Appellant's Brief, at 12. The record does not support this claim.

A disorderly conduct conviction under 18 Pa.C.S.A. § 5503(a)(3), requires using "obscene language" "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof[.]"

While a passenger in a car that was the subject of a valid traffic stop, the police removed Butler from the vehicle.[2] *See* N.T., Waiver Trial, 10/13/15, at 17. "[A]bout 30 people," *id*., at 40, on "a very small street" *id*., at 18, were watching what was going on. According to Officer Ray D'Amico, Butler "was yelling very loudly" "[g]et the eff [i.e., fuck] off of me." *Id*. Butler was "just out of control." *Id*. And the crowd of observers was "coming up yelling and screaming." *Id*., at 41.

Butler's actions in loudly yelling, in front of a crowd of thirty people, who were also yelling and screaming, on a small street, for the police

---

[2] It was necessary to remove Butler from the vehicle after he tried to exit the car when Officer Ray D'Amico shined a flashlight "inside of the [passenger] door to illuminate the area" during the nighttime stop. N.T., Waiver Trial, 10/13/15, at 17. Butler "took a swing at the flashlight" and told Officer D'Amico to "'get that light out of my face, pussy.'" *Id*.

While being transported to the police station, Butler informed Officer Steven Toner that he "fuck[s] crackers like you in prison," *id*., at 42, and then threatened the officer's child, telling him he would "fuck him up, too," *id*.

officers to get the "[g]et the eff [*i.e.*, fuck] off of me" constitutes the use of obscene language "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." Accordingly, the Commonwealth presented sufficient evidence to sustain the conviction under § 5503(a)(3).

Butler's final claim is his allegation that the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963), by failing to turn over in discovery a "PARS" report, which is the Philadelphia Police Department Arrest Record, and a "7548" report, a Complaint or Incident Report. In **Brady**, the Court decided, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Id**., at 87.

At trial, during the redirect examination of Officer Toner, the Commonwealth sought to mark as Commonwealth's Exhibit C-1 the "7548" report, which was also referred to as the "48" report. **See** N.T., Waiver Trial, 10/13/15, at 49. Butler's trial counsel stated:

> For the record, I don't have a copy of this, Judge. I understand there are two CP [docket] numbers maybe that's why. I'm not trying to say he's [*i.e.*, the prosecutor] trying to hide anything from me. I want to just have a copy, and then I have some questions with it.

**Id**. The court crier made a copy of the "7548" report for defense counsel and handed it to her. **See id**., at 50. Defense counsel then recross-examined Officer Toner.

On redirect examination, the Commonwealth referenced the "PARS" report, *see id*., at 50, and defense counsel asked Officer Toner questions about that report on recross-examination, *see id*., at 51-52. On re-redirect examination, the prosecutor sought to mark it as Commonwealth's Exhibit C-2. *See id*., at 53. Defense counsel interjected, "I don't have this either, Judge. I don't have it if you don't give it to me. … If I can have a copy of that. We never had a copy of that either." *Id*. The following discussion occurred:

> **The court**: Why isn't the PARS part of discovery?
>
> **The prosecutor**: I have no idea. I have two files. All of this should have been uploaded on eDiscovery on two different ones. If I had known Counsel didn't have it, I certainly would have gotten her anything she wanted that we have. I assumed all those documents were passed. Apparently not.
>
> **Defense counsel**: I don't have either of those two documents. I actually met with Mr. Howell [the prosecutor]. He handed discovery over to me because I was newly assigned to the case because I was appointed by Your Honor. We actually came in here and that's when he handed it over. There is no eDiscovery as far as I know.
>
> **The court**: But there wasn't then, I think.
>
> **The prosecutor**: I've since put it on and I'll also state that the 49[3], the copy and paste on the PARS, I see the 49 sitting on Counsel's desk.
>
> **Defense counsel**: This is the 49. It says nothing about it.
>
> **The prosecutor**: It's all right there.

---

[3] Some other type of police report.

> **The court**: All right. Let's proceed.
>
> **Defense counsel**: I don't have the PARS, though.
>
> **The court**: We'll get you a copy of the PARS.
>
> **Defense counsel**: I'll stip[ulate] for purposes of the trial that this is the PARS. I didn't have it. That's why I asked that question before on cross.

*Id*., at 53-54.

The re-redirect examination of Officer Toner continued briefly, *see id*., at 54-55, and then the prosecutor stated, "Nothing further, thank you," *id*., at 55. Defense counsel responded, "I stip[ulate] to that. That was in the PARS." *Id*. The Commonwealth then moved C-1 and C-2 into evidence and rested.

At no point during trial did Butler claim a *Brady* violation. As the trial court observes, "defense counsel elected to proceed without any further discussion of the issue." Trial Court Opinion, filed 12/16/16, at 6. Butler raises this claim for the first time on appeal.

The "[f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." *Commonwealth v. Pearson*, 685 A.2d 551, 555 (Pa. Super. 1996) (*en banc*) (citing Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")) (additional citation omitted). "*Brady* claims … present fact-based judgments that cannot be adequately first made on appellate review. That is why *Brady* challenges must be brought to the district court's

- 7 -

attention...." ***United States v. Rice***, 607 F.3d 133, 142 (5th Cir. 2010) (citation and internal quotation marks omitted). Accordingly, we need not reach the merits of this issue.

Judgment of sentence affirmed.

President Judge Gantman joins the memorandum.

Judge Strassburger concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2017