# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-20713

Consolidated With: 16-20356

UNITED STATES OF AMERICA,

>  Plaintiff - Appellee

v.

HUEY P. WILLIAMS, JR.,

>  Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

September 27, 2017

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CR-22-1

Before BARKSDALE, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Huey P. Williams, Jr., appeals his conviction for aiding and abetting health care fraud. He challenges the district court's admission of testimony at trial, which he contends was in violation of Federal Rule of Evidence 404(b). For the reasons set forth below, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-20713
Cons. w/ No. 16-20356

I

The federal Medicare program provides health care benefits to millions of Americans who are over the age of 65 or disabled. Medicare fraud schemes steal from taxpayers and prey on some of the most vulnerable in our society.

Williams owned and operated Hermann Medical Supply, a business operating in Texas that supplied durable medical equipment to Medicare beneficiaries.[1] To participate in Medicare, health care providers are required to submit an application in which the provider agrees to comply with all Medicare-related laws and regulations. Once the application is approved, providers are given a Medicare provider number to use when submitting claims for reimbursement. When submitting a claim form, the provider certifies, among other things, that the contents are true and the services rendered were medically necessary. Williams's wife, Marsha, signed the Medicare provider application for Hermann Medical Supply in 2005. The application did not disclose Williams's ownership or management role in the company.

From approximately 2006 to 2010, Williams, through Hermann Medical Supply, orchestrated a scheme to defraud Medicare by submitting bills for durable medical devices that were never provided or not medically necessary. In particular, Williams provided hundreds of patients with neoprene-type soft braces but billed Medicare for more expensive, hard, custom-fitted mechanical braces. He ultimately submitted $3.4 million in false claims, and Medicare paid $1.96 million on those claims.

---

[1] Hermann Medical Supply consisted of two business entities, Hermann Medical Supplies Inc. and Hermann Medical Supplies II, Inc. We refer to them collectively as "Hermann Medical Supply." The businesses had no association with Memorial Hermann Hospital located in Houston, Texas. Williams used the name "Hermann" because it was "recognizable" and "a popular name in the area."

No. 15-20713
Cons. w/ No. 16-20356

Williams was indicted for one count of aiding and abetting health care fraud in violation of 18 U.S.C. §§ 1347 and 2. He pled not guilty, and his case proceeded to jury trial. A pretrial dispute arose whether testimony potentially touching on his criminal history could be admitted at trial. Prior to starting Hermann Medical Supply, Williams had multiple run-ins with the law. His criminal record includes felony convictions for cocaine possession and misdemeanor convictions for assault, resisting an officer, and carrying a weapon.

The government sought to elicit testimony from Marsha regarding why she signed the Medicare provider application for Hermann Medical Supply. The government explained at a pretrial conference, "there may be a witness [who] will testify about statements made by the defendant regarding his criminal record, and in the context of why he's not on the Medicare application." "We don't intend to go into what the criminal record is, or what the convictions are, if there are any. But the fact that defendant made the statement about his criminal record and the context of why he is not on the Medicare application may come out in testimony." Williams sought to preclude the government and its witnesses "from mentioning, eliciting or attempting to elicit information relating to Defendant's criminal history or even that Defendant has a criminal history. The district court preliminarily granted Williams's pretrial motion to exclude the evidence but clarified that "all it means is that at the time, when this is about to come out, you have to come up and convince—and tell me about it again."

During a sidebar at trial, the government stated that it was "about to get into the testimony regarding the defendant's past history as to why she [i.e., Marsha] was on the Medicare application." Williams again objected, arguing that the government's strategy was "a factual way to get into an extraneous

3

No. 15-20713
Cons. w/ No. 16-20356

offense that is not admissible." The government responded that the testimony was "relevant to show that Ms. Williams was only on the application for a certain reason. Again, we will not ask what the actual offense was, but about the statement that he told her, which is covered under [Federal Rule of Evidence 801(d)(2)(A)]."[2]

The district court overruled Williams's objection. After some preliminary discussion regarding the Medicare provider application, Marsha testified as follows:

> Q. Do you know – why did you sign it instead of the defendant?
>
> A. Because he told me it would be difficult for him to start the business because of his past.

No further questioning was made regarding Williams's "past." The government did not mention Williams's criminal record during opening or closing statements or elicit such testimony from other witnesses. Williams did not request a limiting instruction regarding his wife's testimony, nor did he take the stand.

After a two-day trial, the jury convicted Williams of aiding and abetting health care fraud. The district court sentenced Williams within the Guidelines range to 63 months in prison and ordered $1.96 million in restitution. Williams appeals his conviction.

II

Williams contends that the district court erred by admitting Marsha's testimony that "he told me it would be difficult for him to start the business because of his past." He argues that allowing the government to "allud[e] to" his "criminal past" violated Federal Rule of Evidence 404(b). We review

---

[2] Federal Rule of Evidence 801(d)(2)(A), a rule not at issue here, relates to hearsay and provides that a statement offered against an opposing party that was made by the party is not hearsay.

evidentiary rulings for abuse of discretion. *See United States v. Kinchen*, 729 F.3d 466, 470 (5th Cir. 2013).

## III

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." The rule precludes use of such evidence to show that the defendant "is by propensity a probable perpetrator of the crime" charged. *Old Chief v. United States*, 519 U.S. 172, 181 (1997); *see also Michelson v. United States*, 335 U.S. 469, 475 (1948) ("The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime.").

"As a threshold matter, Rule 404(b) is only implicated when the offered evidence is extrinsic; evidence intrinsic to the charged offense does not implicate the rule." *United States v. Crawley*, 533 F.3d 349, 353-54 (5th Cir. 2008); *see also United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) ("To determine whether 'other acts' evidence was erroneously admitted, we must first decide whether the evidence was intrinsic or extrinsic."). Evidence is "intrinsic" when evidence of another act and the crime charged are "inextricably intertwined," both are part of a "single criminal episode," or the prior act was a "necessary preliminar[y]" of the crime charged. *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990) (internal quotation marks omitted). The district court did not classify the evidence at issue.

Marsha's testimony offered evidence of Williams's conduct of preparing and filing a Medicare provider application in a deceptive manner. At trial, the government asked Marsha to testify why she signed the application rather

than Williams, the company's true owner and manager. This line of questioning went to a necessary predicate of Williams's commission of health care fraud: an approved Medicare provider application. Williams's scheme hinged on an approved application, and the criminal acts that followed—in particular, submitting false bills—required Medicare approval and a provider number. The jury was entitled to know the full context of Williams's relationship with Hermann Medical Supply, starting with the company's foundational acts and continuing through the criminal episode. *See id.*; *see also United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996) (stating that intrinsic evidence is admissible to "complete the story of the crime by proving the immediate context of events in time and place"); *United States v. Dula*, 989 F.2d 772, 777 (5th Cir. 1993) ("The defendants were charged with conducting a continuing scheme to defraud . . . . In developing proof of intent and motive, the prosecution may offer all of the surrounding circumstances that were relevant.").

This evidence was intrinsic to the crime of health care fraud charged in the indictment. Because "[i]ntrinsic evidence is generally admissible," its "admission is not subject to [R]ule 404(b)." *United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005).

Williams's appeal centers on his contention that Marsha offered extrinsic evidence of his criminal past in her testimony, triggering Rule 404(b). We fail to see how the vague excuse given for Williams's decision not to sign the Medicare provider form—his "past"—sufficiently invokes the rule. It is true that prior to trial, there was reason for Williams to be concerned about references to his past criminality. But in response to his motions, the government assured Williams that it would not delve into "the criminal record"

or any "actual offense." Had it elicited testimony depicting Williams as a past cocaine user or assaulter, for example, this would be a different case altogether.

We read the Federal Rules of Evidence in accordance with their "structure" and "plain language." *See Huddleston v. United States*, 485 U.S. 681, 687 (1988) (interpreting Rule 404(b)). On this record, Marsha's four-word snippet of testimony—"because of his past"—does not provide "[e]vidence of a crime, wrong, or other act." Rule 404(b) evidence can be admitted "only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id.* at 689 (citing *United States v. Beechum*, 582 F.2d 898, 912-13 (5th Cir. 1978) (en banc)); *see also Michelson*, 335 U.S. at 475 (warning against admission of "specific criminal acts"). As the government correctly points out, "the typical case involves a single wrong, such as a prior conviction for an offense similar to the charged offense." Here, Marsha's vague reference to Williams's "past" is not evidence of a prior act, thus leaving her testimony outside of the Rule 404(b) framework. To hold otherwise would open up a host of testimony to scrutiny under that rule.[3]

IV

Williams contends that, even if the evidence is not rendered invalid by Rule 404(b), this testimony is more prejudicial than probative and should have been excluded under Rule 403. We disagree. The scope of Rule 403 is narrow and may be applied to exclude evidence only "cautious[ly]" and "sparing[ly]." *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007). Further, a district

---

[3] We note that below, the government argued—correctly in our view—that "Rule 404(b) is not relevant to the testimony at issue" because Marsha's testimony was "far too vague to be inadmissible 404(b) evidence." Now, the government takes a less certain stance. On appeal, the government finds it "doubtful" and "hard to see how" Marsha's testimony falls within the ambit of Rule 404(b), yet it spends the vast majority of its brief assuming "arguendo" that her testimony implicates the rule.

No. 15-20713
Cons. w/ No. 16-20356

court's decision on Rule 403 grounds is entitled to great deference and should be "disturbed 'rarely' and only when there has been 'a clear abuse of discretion.'" *Id.* (quoting *United States v. Maggitt,* 784 F.2d 590, 597 (5th Cir. 1986)).

Here, the district court did not clearly abuse its discretion in admitting the testimony at issue. Marsha's statement that she signed the Medicare provider application form for Hermann Medical Supply in 2005 instead of Williams "because of his past" has probative value because it tends to show an intent to defraud. And the risk of unfair prejudice to Williams from this vague statement was extremely limited, as no further questioning was undertaken regarding Williams's "past," nor was Williams's criminal record mentioned during the trial. Thus, the probative value of the statement was not substantially outweighed by the risk of unfair prejudice.The district court did not abuse its discretion in allowing Marsha's testimony.[4]

V

We AFFIRM the judgment of the district court.

---

[4] We need not reach the parties' remaining arguments regarding whether the evidence is admissible under Rule 404(b)(2), *see* 582 F.2d at 911, or whether any error was harmless.