# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 8, 2011

No. 10-40427

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

ELEAZAR (ELI) CASTILLO GARCIA; MARGUERITE JEANETTE GARCIA,
also known as Jeanette Crout, also known as Jeanette Crout-Garcia, JOHN
D. MARTINEZ,

Defendants–Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:09-CR-236-1

Before GARWOOD, GARZA, and DENNIS, Circuit Judges.

PER CURIAM:[*]

In this consolidated criminal appeal, the Defendants-Appellants challenge various aspects of their convictions and sentences for health care fraud and conspiracy to commit health care fraud under 18 U.S.C. §§ 2, 1347 and 1349. For the reasons discussed below, we AFFIRM all aspects of the district court's orders regarding John D. Martinez and Eleazar ("Eli") Garcia. We AFFIRM

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40427

Marguerite Jeanette Garcia's conviction but VACATE her sentence and REMAND for re-sentencing consistent with this opinion.

I

From 1996 to 2009, Defendant-Appellant Marguerite Jeanette Garcia ("Jeanette Garcia") owned and operated Orthopedic Specialists Durable Medical Equipment ("OSDME") in Corpus Cristi, Texas.  OSDME supplied and provided orthotic and prosthetic goods and services.  The business had enrolled in Medicare and Medicaid with one brief interruption.  Jeanette Garcia prepared the Medicare and Medicaid reimbursement applications for OSDME while her husband, Defendant-Appellant Eli Garcia, worked as an OSDME employee.  From 1996 until 1999, Eli Garcia provided orthotic and prosthetic goods and services to patients at OSDME.  At that time, OSDME could bill Medicare and Medicaid for the Garcias' services because the State of Texas did not require a license to practice orthotics.  Eli Garcia was not, and is not, a licensed orthotist.

In 1999, Texas enacted the Orthotics and Prosthetics Act,[1] which required that for OSDME to be an accredited orthotic facility, the firm had to be under the clinical direction of an orthotist licensed by the Texas Board of Orthotics and Prosthetics. As a result, the Garcias reached an agreement with Defendant-Appellant John D. Martinez ("Martinez"), whereby Martinez would serve as the practitioner-in-charge of OSDME one day each week.  Martinez was licensed to practice orthotics in Texas.  Along with his brother, Martinez co-owned and operated San Antonio Orthotics & Artificial Limbs ("San Antonio OAL").  The arrangement between Martinez and the Garcias lasted from February 2002 to December 2008.  Under the Orthotics and Prosthetics Act, OSDME was not supposed to operate without a licensed orthotist on site, but the Garcias often operated OSDME when Martinez was not present.

---

[1] Act of Sept. 1, 1999, 76th Leg., R.S., ch. 388, § 1, 1999 Tex. Gen. Laws 1431, 2029–42 (codified as amended at Tex. Occ. Code Ann. §§ 605.001–.355).

2

No. 10-40427

For a period of time, OSDME and Martinez's business, San Antonio OAL, had network arrangements with UnitedHealth Group ("United") and several other private health care benefit programs.  In 2003, however, United terminated San Antonio OAL's provider agreement.  This meant that if San Antonio OAL provided medical benefits, items, or services to a patient insured by United, that bill would be denied or paid at a significantly reduced amount than if the service was provided by OSDME, a network provider.  After United terminated Martinez's network provider agreement, Martinez contacted Jeanette Garcia and asked for help.  The two devised a plan under which Jeanette Garcia would file claims with United for services that Martinez had provided at San Antonio OAL.  Then, Jeanette Garcia would use the coding number for OSDME and falsely certify that the services were provided by OSDME.  The bills were paid as though a network provider had performed the services.  During the next several years, OSDME submitted approximately $337,000 in claims to United for services performed by San Antonio OAL.  After receiving payment from United, Garcia would send San Antonio OAL a check for about ninety-five percent of the money OSDME had received.

A federal grand jury indicted Eli Garcia, Jeanette Garcia, and Martinez ("Appellants") in a twenty-count indictment.  Count one of the indictment alleged the Appellants conspired to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349.  Counts two through thirteen alleged the Appellants had committed healthcare fraud involving Medicare and Medicaid in violation of 18 U.S.C. § 2, 1347, and 1349.  Counts fourteen through twenty of the indictment alleged the Appellants had committed healthcare fraud  involving United in violation of 18 U.S.C. §§ 2, 1347, and 1349.  A jury acquitted Martinez on Count one, but convicted him on Counts two, four, six, nine, and fourteen through twenty.  A jury convicted Jeanette Garcia on Counts one, four, six, eight, nine, and fourteen through twenty.  The jury found Eli Garcia guilty of Counts one,

No. 10-40427

four, six, and nine. After sentencing, the Appellants appealed their convictions and sentences to us. Martinez and Jeanette Garcia argue that the Government provided insufficient evidence for the jury to reasonably conclude that they were guilty. In addition, Martinez contends the admission of character evidence unfairly prejudiced him and the prosecutor's closing remarks violated the trial court's limiting instructions. All the Appellants contest the district court's jury instructions and that court's calculation of the loss amount for sentencing purposes. Finally, Jeanette Garcia argues that the district court imposed an unreasonable sentence on her by enhancing her total offense level.

## II

Martinez and Jeanette Garcia make various assertions about the sufficiency of the evidence. We first consider Martinez's arguments concerning his conviction on Counts two, four, six, and nine of the indictment for his defrauding of Medicare and Medicaid. Then, we consider Martinez's and Jeanette Garcia's sufficiency of the evidence arguments as they relate to their convictions for defrauding United in Counts fourteen through twenty of the indictment.

When considering a sufficiency of the evidence challenge, we view the evidence in the light most favorable to the Government, and we evaluate whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See United States v. Mann*, 493 F.3d 484, 492 (5th Cir. 2007). Direct and circumstantial evidence are given equal weight and the evidence need not exclude every reasonable hypothesis of innocence. *United States v. Gonzales*, 79 F.3d 413, 423 (5th Cir. 1996) (per curiam). To establish health care fraud under 18 U.S.C. § 1347, the government must prove: (1) the defendant executed a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) the defendant acted knowingly and willfully with a specific

No. 10-40427

intent to defraud; and (3) the scheme to defraud employed false representations. *United States v. Hickman*, 331 F.3d 439, 443–45 (5th Cir. 2003). Specific intent can be proven through circumstantial evidence and inferences. *See United States v. Ismoila*, 100 F.3d 380, 387 (5th Cir. 1996).

A

Martinez argues that the Government presented insufficient evidence for the jury to reasonably conclude that he aided and abetted the Garcias by defrauding Medicare and Medicaid as alleged in Counts two, three, four, six, and nine of the indictment. Martinez asserts that his mere association with the Garcias is insufficient to sustain an aiding and abetting conviction for health care fraud. At trial, the Government presented circumstantial evidence that between 2002 and 2008, Martinez served as the practitioner-in-charge at OSDME. The Government also demonstrated that during this period, Martinez knew the Garcias operated OSDME when he was not there and that Eli Garcia was not licensed to practice orthotics. The Government also showed that Martinez knew Eli Garcia was performing work that only a licensed orthotist could perform. The Government entered into evidence numerous billing records that demonstrated the Garcias had billed Medicare for customized shoes and inserts when, in fact, the Garcias had provided patients with off-the-shelf goods or non-customized services. In light of this evidence, a rational trier of fact could reasonably infer that Martinez knowingly aided and abetted the Garcias in their scheme to defraud Medicare and Medicaid.

B

Martinez and Jeanette Garcia contend that the Government did not present sufficient evidence to support their convictions on Counts fourteen through twenty of the indictment for knowingly defrauding United. Specifically, the Appellants argue that while OSDME billed United for services provided at San Antonio OAL, that billing was not fraudulent. Rather, Martinez and

5

No. 10-40427

Jeanette Garcia characterize the billing irregularities as a breach of contract, not evidence of fraudulent misconduct. The evidence presented at trial tells a different story.

The provider agreement between OSDME and United specifically stated that new locations acquired by OSDME would not be covered by the provider agreement unless both parties agreed in writing. No such written agreement existed between OSDME and United. Jeanette Garcia testified that she notified United of the subcontracting arrangement with San Antonio OAL via letter. She stated that she had sent the letter in April 2002, a year before United terminated San Antonio OAL's provider agreement. United, however, had no record of the purported notification letter. Moreover, the earliest OSDME check to San Antonio OAL for a related billing was dated November 2003. Based on this evidence, the jury could have reasonably disregard Jeanette Garcia's testimony concerning her alleged notification letter and have given more weight to the Government's evidence regarding the agreement between the Appellants and the payments from OSDME to San Antonio OAL. In light of our deferential standard governing conflicting evidence in legal sufficiency claims, the evidence permits a rational fact-finder to conclude that Jeanette Garcia and Martinez knowingly executed a scheme to defraud United.

III

Martinez also contends that the district court erred by admitting evidence related to the character of the Garcias, which he alleges was irrelevant and unfairly prejudicial to him. Because Martinez objected to the admission of such evidence at trial, we review the district court's ruling for an abuse of discretion. *See United States v. Morgan,* 505 F.3d 332, 339 (5th Cir. 2007) (per curiam). To constitute reversible error under this standard, the admission of the evidence in question must have substantially prejudiced Martinez's rights. *United States v. Sanders*, 343 F.3d 511, 519 (5th Cir. 2003).

No. 10-40427

Specifically, Martinez asserts that the district court violated Rule 404(b) of the Federal Rules of Evidence by admitting evidence that: (1) Eli Garcia had failed the Texas state examination to become a licensed orthotist; (2) Eli Garcia's low test scores on the state exam revealed the true danger he posed to patients at OSDME by practicing orthotics in any manner; and (3) the Garcias had experienced problems with Medicare and Medicaid before Martinez associated with them. Although the district court instructed the jury not to consider this evidence against him, Martinez argues that the court's instructions were rendered useless when the prosecution invited the jury to consider this evidence.

Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b). When evaluating whether the district court erroneously admitted evidence of "other acts" under Rule 404(b), we must initially determine whether the district court admitted intrinsic or extrinsic evidence. *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010). "'Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.'" *Id. (*quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)) (internal quotation marks omitted). "Intrinsic evidence does not implicate rule 404(b), and

'consideration of its admissibility pursuant to [that rule] is unnecessary.'" *Id.* (quoting *United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir. 1994)).  Where evidence of other acts is extrinsic to the crime charged, we employ a two-prong test to determine admissibility under Rule 404(b).  *Sanders*, 343 F.3d at 517–18. First, we determine whether "the extrinsic evidence is relevant to an issue other than the defendant's character, [such as] motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *Id.* at 518.  And second, "the evidence must possess probative value that is not substantially outweighed by its undue prejudice."  *Id. (*quoting *United States v. Anderson*, 933 F.2d 1261, 1269 (5th Cir. 1991)).

Under Rule 404(b), the evidence of Eli Garcia's failed attempts to become a licensed orthotist, or the Garcias' problems with Medicare and Medicaid prior to February 2002, was relevant to Eli Garcia's motive, knowledge, and preparation in regards to the health care fraud charges. At trial, the district court correctly instructed the jury to consider the evidence separately as to each defendant.  To the degree that Martinez complains such evidence was irrelevant and unfairly prejudiced him, relief for such a contention may only occur where a "jury could not be expected to compartmentalize the evidence as it relates to separate defendants."  *United States v. Williams*, 809 F.2d 1072, 1084 (5th Cir. 1987) (citing *United States v. Lemm*, 680 F.2d 1193, 1205 (8th Cir. 1982)).  Here, the jury could have easily separated this evidence given that the proof of "other acts" evidence directly related to the Garcias' charged offenses. Furthermore, Martinez has failed to demonstrate compelling prejudice by the trial court's admittance of the evidence.  The district court, therefore, did not err by admitting this evidence.

No. 10-40427

IV

Martinez contends that his convictions on Counts two, four, six, nine, and fourteen through twenty must be reversed because the prosecutor's closing argument was unfairly prejudicial. Martinez failed to object to the closing argument at trial, and therefore, we review for plain error. *Rice*, 607 F.3d at 138. To establish plain error, Martinez must show the district court clearly and obviously erred in a manner that affected his substantial rights. *United States v. Baker*, 538 F.3d 324, 332 (5th Cir. 2008). Even if Martinez makes such a showing, we have the discretion to correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* "Improper prosecutorial comments constitute reversible error only where 'the defendant's right to a fair trial is substantially affected.'" *United States v. Bernard*, 299 F.3d 467, 488 (5th Cir. 2002) (quoting *United States v. Andrews*, 22 F.3d 1328, 1341 (5th Cir. 1994)). In resolving this issue, we consider the magnitude of the prejudicial effect of the challenged statements, the efficacy of any cautionary instructions, and the strength of the evidence of the defendant's guilt. *Id.* We do not view the prosecutor's comments in isolation, but rather, in the context of the entire trial. *See United States v. Young*, 470 U.S. 1, 14–16 (1985). "'The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict.'" *United States v. Holmes*, 406 F.3d 337, 356 (5th Cir. 2005) (quoting *United States v. Iredia*, 866 F.2d 114, 117 (5th Cir. 1989)).

Martinez alleges that the prosecutor urged the jury to disregard the district court's limiting instructions and to consider evidence about the Garcias' "bad character" when weighing the charges against him. Specifically, Martinez takes issue with two aspects of the prosecutor's closing argument in which the prosecutor stated that Martinez had known about the Garcias' troubles with the licensing board and that Martinez had "stepped into that history" when he

No. 10-40427

agreed to be the practitioner-in-charge at OSDME. But, the trial court admonished the jury several times that evidence admitted regarding events prior to February 22, 2002, was "admitted for purposes of the Garcias and not for Martinez." One element of the offenses with which Martinez was charged alleged that he "knowingly devised and intended to devise a scheme or artifice to defraud." The Government did not ask the jury to consider as evidence against Martinez evidence that Eli Garcia was told by the Board of Orthotics and Prosthetics to cease and desist practicing orthotics or that neither Eli Garcia nor OSDME had a license to practice orthotics. Instead, the Government asked the jury to consider whether Martinez knew of those events when the Appellants developed their scheme to defraud Medicare and Medicaid. As such, the prosecutor's comments bear directly on an element of the charged offenses and the district court did not err by admitting this evidence.

V

The Appellants contend that for Counts two through thirteen, the district court erred by failing to properly instruct the jury about off-the-shelf products and the payment rules for Medicare and Medicaid. The Appellants did not properly preserve this issue for appeal and we therefore review the matter for plain error. *Rice*, 607 F.3d at 139–40.[2] In assessing whether plain error occurred, we are mindful that a "district court retains substantial latitude in formulating its jury charge, and we will reverse only if the requested instruction is substantially correct; was not substantially covered in the charge as a whole; and if the omission of the requested instruction seriously impaired the defendant's ability to present a given defense." *United States v. Cain*, 440 F.3d 672, 674 (5th Cir. 2006) (internal quotations and citations omitted). "The trial court may decline a suggested charge which incorrectly states the law, is without

---

[2] *See supra* p. 9.

10

No. 10-40427

foundation in the evidence, or is stated elsewhere in the instructions." *United States v. Robinson*, 700 F.2d 205, 211 (5th Cir. 1983).

Under § 1347, a conviction for Medicare and Medicaid health care fraud requires the Government to establish that a defendant: (1) executed a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) acted knowingly and willfully with a specific intent to defraud; and, (3) that the scheme to defraud employed false representations. *Hickman*, 331 F.3d at 443–45.

The Appellants argue that the district court erred when it failed to instruct the jury that: (1) a "qualified practitioner" means a physician or other individual who is licensed in orthotics or prosthetics by that State, and (2) as a condition of payment under Medicare and Medicaid, that Texas does not require an orthotics license to sell "off-the-shelf extra-depth shoes for diabetics."[3] The district court allowed the parties to argue these points in their closing arguments, but did not include these items in the jury instructions. The Appellants argue that because of such failure, the district court turned a question of law into a matter of jury speculation. We disagree.

The Indictment charged the Appellants with knowingly defrauding health care benefits plans by executing a scheme involving false representations. The false representations occurred when the Garcias, with Martinez's knowledge, provided non-customized shoes and inserts to customers and then used Medicare and Medicaid billing codes to obtain payment. Eli Garcia's status as an orthotics practitioner bears no relevance to whether the Appellants fraudulently billed Medicare for products and services that OSDME did not actually provide. By

---

[3] The Appellants' briefs fail to state the counts of the indictment to which this proposed instruction related. We assume, however, that these proposed instructions relate to Counts two through thirteen, which allege health care fraud of Medicare.

11

No. 10-40427

declining the Appellants' suggested charge, the district court did not clearly or obviously err in a manner that substantially affected the Appellants' rights.

VI

The Appellants also allege that the district court erred in determining their sentences by improperly calculating their total offense levels under the Guidelines. Before the district court, Martinez did not object to his sentence, which means we review his sentence for plain error.[4]  For Jeanette and Eli Garcia, who both timely objected to their sentences, we first review their sentences for "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007).  And, if there is no significant procedural error, we consider the "substantive reasonableness of the sentence imposed under an abuse-of-discretion standard[,]" employing a totality-of-the-circumstances test.  *Id.*  A sentence imposed within a properly calculated Guidelines range is entitled to a presumption of reasonableness. *Rita v. United States*, 551 U.S. 338, 347 (2007). In conducting this bifurcated analysis, we review the district court's application of the guidelines de novo and that court's factual findings for clear error.  *United States v. Cisneros-Gutierrez,* 517 F.3d 751, 764 (5th Cir 2008).  Factual findings are not clearly erroneous if they are plausible in light of the record read as a whole.  *United States v. Ayala*, 47 F.3d 688, 689–90 (5th Cir. 1995).

A

The Appellants object to the way in which the district court determined the "amount billed" when that court calculated the total amount of loss under section 2B1.1 of the Sentencing Guidelines.[5]  The district court calculated the

---

[4] *See supra* p. 9.

[5] Section 2B1.1 provides that the base offense level for a fraud conviction should be based on the amount of the loss to the health care provider.  Loss is defined as the greater of either the actual or intended loss. U.S. SENTENCING GUIDELINES MANUAL § 2B1.1, cmt. n.3

No. 10-40427

Appellants' sentences based on the total amount of the claims submitted to Medicare and Medicaid for diabetic shoes, and for the total claims submitted to United. The Appellants argue that any loss to Medicare due to fraudulent billing should be offset by the fair market value of the merchandise provided to patients. Furthermore, the Appellants allege that United's amount of loss should be the difference between the amount paid to the network provider and the amount that would have been paid to a non-network provider, further discounted by the value of the services.

The Appellants had the burden to provide rebuttal evidence that would undermine the reasonableness of the loss amounts calculated in the Pre-Sentence Report ("PSR") relied on by the district court. *United States v. Ingles*, 445 F.3d 830, 839 (5th Cir. 2006). Although the Appellants objected to the method of calculating loss, none of the Appellants presented any countervailing evidence showing that the PSR's calculations were unreliable. Given the information available to the district court, that court's method of calculating the loss was reasonable. *United States v. Onyiego*, 286 F.3d 249, 256 (5th Cir. 2002); *see also* U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. n.3(C) (2010). The district court did not err in determining that the loss amount attributable to the Garcias' and Martinez's conduct exceeded $400,000, and $200,000, respectively. *Onyiego*, 286 F.3d at 256. Thus, under the Guidelines, that court did not err by applying the fourteen-level enhancement for Jeanette and Eli Garcia and the twelve-level enhancement for Martinez.

B

Jeanette Garcia contends that the district court erred by enhancing her total offense level under Sentencing Guidelines section 3B1.1(b) for her role as a manager within the scheme, her position of trust within OSDME, and the fact

---

(2010).

that she was aware of the cease and desist order issued to Eli Garcia by the Texas Board of Orthotics and Prosthetics.  As described above, we first consider whether the district court erred procedurally and then we evaluate the substantive reasonableness of the sentence under an abuse of discretion standard.  *Gall*, 552 U.S. at 51.  Although we review a district court's factual findings related to sentencing for clear error, that court's interpretation and application of the Guidelines is reviewed de novo. *United States v. Randall*, 157 F.3d 328, 330 (5th Cir. 1998).

The district court imposed a three-level increase on Jeanette Garcia for her managerial role in the offense.  Sentencing Guidelines section 3B1.1(b) provides for a three-level enhancement "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."  Sentencing Guidelines section 3B1.1(b).  The district court applied the enhancement, finding by a preponderance of the evidence that the criminal activity involved five or more people or was "otherwise extensive."  On appeal, Jeanette Garcia contends that she did not manage Eli Garcia or Martinez, but rather, she was simply the person who filled out forms and applications, and managed OSDME's office personnel at OSDME.  Based on the record, the district court's factual finding that Jeanette Garcia had a managerial role is more than plausible.  The record shows that Jeanette ran the day-to-day operations at OSDME; that she directed Eli Garcia regarding which billing codes to use and how to bill Medicare, Medicaid, and United; that she supervised numerous employees at OSDME involved in billing; and that she instructed and oversaw the San Antonio OAL employees who handled billing and financial matters.  The district court did not clearly err by finding that "it is not unreasonable to assume or to find that Ms. Garcia was behind the entire operation; that she organized it, she put out for

bids to find somebody with a license, did all the bookkeeping, made all the charges . . . ."

The district court also imposed a two-level increase for Jeanette Garcia's breach of a position of trust. Sentencing Guidelines section 3B1.3 provides for a two-level enhancement if "the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." We have previously held that doctors and health care providers occupy a position of trust with respect to the insurers they bill and the court has approved sentence enhancements for violations of that trust. *See United States v. Gieger*, 190 F.3d 661, 665 (5th Cir. 1999); *United States v. Iloani*, 143 F.3d 921, 922–23 (5th Cir. 1998). Jeanette Garcia notes that in our prior cases involving a breach of trust and sentencing, the court's finding of a breach of a position of trust involved instances where medical goods and services were billed for, but not provided to the patients. In this case, Jeanette Garcia notes there is no evidence that the patients did not receive the diabetic shoes or treatment for which the Appellants billed. But, we note that on several occasions Jeanette Garcia falsified forms necessary for OSDME to keep its accreditation and Medicare provider number. In addition, Jeanette Garcia also made false certifications to United in which each of her billing statements certified that the services billed to United "were personally furnished by me or my employees under my personal direction," when, in fact, the services were actually provided by medical staff at San Antonio OAL. Furthermore, the record shows a conspiracy to defraud that spanned six years and involved several thousand fraudulent bills submitted to federal, state, and private insurance benefits programs. On this record, the district court's finding that Jeanette Garcia abused her position of trust with federal, state, and private medical insurers is plausible and, consequently, not clearly erroneous. *Ayala*, 47 F.3d at 689–90; *Iloani*, 143 F.3d at 922–23.

No. 10-40427

Finally, Jeanette Garcia argues that the district court erred by imposing a two-level increase pursuant to Sentencing Guidelines section 2B1.1(b)(8)(C) based on the cease and desist order that the Texas Board of Orthotics and Prosthetics had issued to Eli Garcia in October 2001. Specifically, Jeanette Garcia argues that the district court erred because she was not in violation of any prior order, injunction, decree or process. And, she asserts that the trial court erred because an enhancement under section 2B1.1(b)(8)(C) cannot be applied unless a defendant has violated an order or decree that results from an adjudicative process, which did not occur here.

The district court's conclusion constitutes an interpretation and application of the Guidelines, which we review de novo. *Cisneros-Gutierrez*, 517 F.3d at 764. Section 2B1.1(b)(8)(C) allows for a two-level enhancement where "the offense involved . . . a violation of any prior, specific judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines." In overruling Jeanette Garcia's objection to the enhancement, the district court relied on section 1B1.3(a)(2) of the Sentencing Guidelines, which states that a defendant is accountable for acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction. In this case, application of the conspiracy enhancement is based on the district court's factual finding that Jeanette Garcia's co-conspirator, Eli Garcia, violated a prior, specific judicial or administrative order as part of their common scheme. The evidence at trial also indicated that Jeanette and Eli Garcia worked together at OSDME and that both were involved with the fraudulent billings. Given this evidence it was plausible for the district court to find that Jeanette and Eli Garcia were part of the same common scheme. *Ayala*, 47 F.3d at 689–90. Furthermore, it is clear that under section 1B1.3(a), a defendant may be held accountable for all acts and omissions of co-conspirators related to furthering the conspiracy. *See United States v. Boman*, 632 F.3d 906,

No. 10-40427

911 (5th Cir. 2001).  The district court, therefore, did not err by concluding that Jeanette Garcia could be held liable for the acts of her co-conspirator, Eli Garcia, which were performed in furtherance of the conspiracy.

We have not previously considered Jeanette Garcia's second argument: whether violating a cease and desist order from the Texas Board of Orthotics & Prosthetics qualifies as an "act or omission" for purposes of the Guidelines. Other circuit courts have considered this issue and generally, these courts have only imposed "the enhancement after a meaningful negotiation or interaction led the agency to issue a directive that the defendant subsequently violated." *United States v. Goldberg*, 538 F.3d 280, 291 (3d Cir. 2008); *see also United States v. Malol*, 476 F.3d 1283, 1293–94 (11th Cir. 2007); *United States v. Mantas*, 274 F.3d 1127, 1132–33 (7th Cir. 2001); *United States v. Spencer*, 129 F.3d 246, 252 (2d Cir. 1997).  Federal circuit courts have not permitted application of the sentencing enhancement "to every situation where 'a defendant knew or was told by someone in authority that what she was doing was illegal.'" *United States v. Wallace*, 355 F.3d 1095, 1097-98 (7th Cir. 2004) (quoting *United States v. Linville*, 10 F.3d 630, 632–33 (9th Cir. 1993)). Rather, a district court's application of the enhancement was only affirmed when the notice, order, or judgment stemmed from an "interaction between the agency and defendant that allowed the defendant to participate in some meaningful way. . . and that led to a definite result." *Goldberg*, 538 F.3d at 291.  As the Ninth Circuit noted, "the Sentencing Commission did not intend to subject every recipient of relatively informal missives and official notifications and warnings of violations from administrative agencies to the extra penalties designed for people with aggravated criminal intent." *Linville*, 10 F.3d at 633 (internal citations and quotations omitted).

In this matter, the Board's cease and desist order was an administrative warning that could lead to monetary penalties if violated.  The order did not

stem from a hearing, negotiations, or an interaction between Eli Garcia and the Texas Board of Orthotics & Prosthetics that allowed Eli Garcia "to participate in some meaningful way" and that led to "a definite result." *Goldberg*, 538 F.3d at 291. Rather, the Board issued the order after it had denied Eli Garcia's licensing requests because he repeatedly failed the licensing exam. Furthermore, there is no evidence in the record that the Board fined Eli Garcia for violating the order prior to his federal indictment. It appears that the cease and desist order was not akin to the formal orders for which other circuits have relied on when those courts affirmed sentence enhancements under section 2B1.1(b)(8)(C) of the Sentencing Guidelines. Thus, the district court erred by using this order to enhance Jeanette Garcia's sentence.

## VII

We AFFIRM all aspects of the district court's orders and judgments except for that court's sentencing order for Jeanette Garcia. We VACATE Jeanette Garcia's sentence and REMAND to the district court for re-sentencing consistent with this opinion.