# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 30, 2013

No. 12-30890

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CRAIG MICHAEL NASH,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before SMITH, GARZA, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Craig Nash appeals the district court's imposition of a two-level sentencing enhancement pursuant to U.S.S.G. § 2B1.1(b)(9)(C) for violating a prior, specific administrative order.  For the following reasons, we AFFIRM the sentence.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2003, Craig Nash opened the "Goodfellas Tobacco" convenience store ("Goodfellas").  He subsequently applied to the Food and Nutrition Service of the United States Department of Agriculture ("USDA") to become an authorized retailer of the Supplemental Nutrition Assistance Program ("SNAP"), commonly known as the "food stamp" program.  SNAP is a food assistance program that enables low-income households to buy food using monthly benefits

No. 12-30890

in the form of electronic benefit transfer cards redeemable for food at authorized retail stores. As part of the application process, Nash agreed to abide by SNAP regulations, which prohibited the unlawful purchasing and redeeming of SNAP benefits, including for ineligible items like alcohol. Nash's application was granted on January 28, 2004, and Goodfellas began accepting SNAP benefits.

Based on suspicious transactions, the USDA opened an investigation into possible food stamp trafficking by Goodfellas on February 2, 2007. The USDA determined that between January 17 and April 3, 2007, Goodfellas violated SNAP regulations on four occasions by accepting SNAP benefits in exchange for ineligible merchandise. The USDA sent Nash a letter dated July 1, 2008, charging Nash with misuse of food stamp benefits, and notifying him that the violations called for a six-month disqualification period from SNAP or, under certain circumstances, a civil money penalty. The letter provided Nash with the opportunity to reply to the charges; it stated that he could have legal counsel present at any meeting. Finally, the letter stated that if Nash did not reply within ten days of receipt of the letter, the USDA would reach a decision based on the available information and advise him in writing.

Nash replied on July 8. The USDA sent him a second letter dated July 9, confirming receipt and consideration of the reply. The letter also stated that the USDA had concluded that the violations cited in the July 1 letter had occurred. Because the USDA found that Goodfellas' disqualification from SNAP would cause hardship for food stamp households, the agency imposed a civil money penalty of $14,742.00. The letter warned that failure to pay the fine would result in a six-month disqualification from SNAP. Further, "[i]f it is determined that you accepted food stamp benefits after the effective date of disqualification, you will be subject to a severe monetary fine . . . and possible prosecution under applicable laws." The July 9 letter also stated that the USDA's decision constituted a final determination unless Nash submitted a written request for

2

review. The letter concluded by alerting Nash that this decision did not preclude the USDA or any other agency "from taking further action to collect any claim determined under [the food stamp program regulations], or under any other pertinent statutes or regulations," or "prosecution under applicable laws." Nash acknowledged the violation and agreed to pay the fine.

Because of continuing suspicious activity at Goodfellas, the USDA's Office of Inspector General began a criminal investigation on September 23, 2009, to determine if the store was still violating SNAP regulations. Federal agents with the assistance of cooperating witnesses made ten undercover visits to Goodfellas, during which store employees exchanged $2,862.34 in SNAP benefits for $1,395.00 in cash and ineligible items such as beer, liquor, and cigarettes. The illegal transactions resulted in multiple fraudulent wire transfers of funds from the United States Treasury into Goodfellas' bank account.

In December 2009, while the government's investigation continued, Nash applied for authorization to accept SNAP benefits at a second location, "Goodfellas Grocery II."[1] Nash proceeded to commit food stamp fraud through this second store as well, redeeming a total of $91,006.41 in SNAP benefits, of which at least $62,515.86 was obtained fraudulently. It later was determined that from January 2007 through January 2011, Goodfellas completed a total of 2,066 SNAP redemption transactions resulting in $2,917,587.84 being deposited into Goodfellas' bank account. Combined, Nash's stores fraudulently obtained at least $1,784,135.51 through food stamp trafficking.

On May 12, 2011, Nash was indicted with one count of conspiracy to defraud SNAP in violation of 18 U.S.C. § 371, fifteen counts of food stamp fraud in violation of 7 U.S.C. § 2024(b) or (c), and ten counts of wire fraud in violation of 18 U.S.C. § 1342. Nash pled guilty to the conspiracy count and one count of

---

[1] By this point, Goodfellas had renamed itself "Goodfellas Grocery."

No. 12-30890

wire fraud. A presentence investigation report ("PSR") issued on April 12, 2012. Using the November 1, 2011 Guidelines, the PSR calculated that Nash had a total offense level of 22 and a criminal history category of I, resulting in a recommended sentence of 41-51 months.

As relevant to this appeal, the government objected to the PSR's failure to apply a two-level enhancement under Section 2B1.1(b)(9)(C) of the United States Sentencing Guidelines for an offense involving "a violation of a prior, specific judicial or administrative order, injunction, decree or process." The probation office responded to the government's objection in a May 9 addendum, stating that it could not address the applicability of Section 2B1.1(b)(9)(C) because it did not have documents relating to the 2007 investigation into Nash's SNAP violation. The addendum added, however, that "should the Government be able to provide further evidence concerning the 2007 sanctions, the probation office would agree that the two (2) level enhancement would apply."

The government submitted the July 1 and 9 letters to the district court, which issued a memorandum ruling on August 21, 2012.[2] After reviewing the letters, the court agreed that Section 2B1.1(b)(9)(C)'s two-level enhancement was appropriate. On August 16, the district court sentenced Nash to 60 months' imprisonment on the conspiracy count and 78 months' imprisonment on the wire fraud count, to be served concurrently. The court also imposed a three-year term of supervised release. Nash timely appealed the district court's imposition of a two-level enhancement under Section 2B1.1(b)(9)(C).

## DISCUSSION

We review a district court's interpretation or application of the Guidelines *de novo* and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). A determination that a particular

---

[2] Although not part of the original appellate record, we later granted the government's motion to supplement the record with the July 1 and 9 letters.

No. 12-30890

judicial or administrative action qualifies under Section 2B1.1(b)(9)(C) is an interpretation and application of the guidelines that we review de novo. *Id.*

Section 2B1.1(b)(9)(C) provides that the offense level for a fraud offense must be increased by two levels if the offense involves "a violation of any prior, specific judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines." An Application Note elaborates:

> Subsection (b)(9)(C) provides an enhancement if the defendant commits a fraud in contravention of a prior, official judicial or administrative warning, in the form of an order, injunction, decree, or process, to take or not to take a specified action. A defendant who does not comply with such a prior, official judicial or administrative warning demonstrates aggravated criminal intent and deserves additional punishment. If it is established that an entity the defendant controlled was a party to the prior proceeding that resulted in the official judicial or administrative action, and the defendant had knowledge of the prior decree or order, this enhancement applies even if the defendant was not a specifically named party in that prior case.

U.S.S.G. § 2B1.1(b)(9)(C) cmt. n.7(C).[3]

On appeal, Nash argues that the district court erred in imposing a two-level enhancement under Section 2B1.1(b)(9)(C) based on his prior SNAP violations because "[c]ontrary to the district court's conclusion, the defendant's 'negotiation' with an agency that included the 'definite result' of the payment of a fine [was] insufficient to support [the conclusion] that he failed to comply with a 'definitive directive' of the agency as a result of the subsequent SNAP violations to which he pled guilty." Nash appears to focus on the need for the agency "to issue a directive that the defendant subsequently violated." We understand him to argue that because the July 9 letter did not expressly enjoin

---

[3] Guidelines commentary is binding and is equivalent in force to the Guidelines language itself as long as the language and the commentary are not inconsistent. *United States v. Rayo-Valdez*, 302 F.3d 314, 318 n.5 (5th Cir. 2002).

him from committing food stamp fraud in the future, he cannot now be found to have violated the USDA's order.  We find Nash's argument to be without merit.

We previously have interpreted an argument like Nash's only once, in an unpublished opinion.  *United States v. Garcia*, 432 F. Appx. 318, 321 (5th Cir. 2011).  The court's reasoning was valid and we adopt it here.  The defendant Garcia owned and operated, with the assistance of her husband and co-conspirator, a facility providing orthotic and prosthetic goods and services.  *Id.* at 321.  Subsequently, Texas enacted a statute requiring such facilities to become accredited orthotic facilities under the clinical direction of an orthotist licensed by the Texas Board of Orthotics and Prosthetics.  *Id.*  Although the defendant arranged to have a licensed orthotist serve as the facility's practitioner-in-charge, she continued to do business even when the orthotist was not present in violation of the Texas statute.  *Id.*  The defendant later was convicted of committing health care fraud.  *Id.* at 322.  The district court applied Section 2B1.1(b)(9)(C)'s two-level enhancement on the basis of a cease and desist order issued by the Texas Board of Orthotics and Prosthetics.  *Id.* at 329.  The Board issued its order after denying the husband's licensing request because he had repeatedly failed the licensing exam.  *Id.* at 330.  The order also warned of monetary penalties if the order was violated.  *Id.*

After reviewing decisions from other circuits, we found application of the enhancement inappropriate because the cease and desist order "did not stem from a hearing, negotiations, or an interaction between [the defendant's co-conspirator] and the Texas Board of Orthotics & Prosthetics that allowed [the co-conspirator] 'to participate in some meaningful way' and that led to 'a definite result.'" *Id.* (quoting *United States v. Goldberg*, 538 F.3d 280, 291 (3d Cir. 2008)).  We further observed that "there is no evidence in the record that the Board fined [the co-conspirator] for violating the order prior to his federal indictment" and

that "[i]t appears that the cease and desist order was not akin to the formal orders" that other courts found warranted the enhancement. *Id.*

Applying *Garcia*'s reasoning, the district court correctly found that Nash's prior violation of SNAP and his acknowledgment of the violation satisfied the requirement that there be "interaction" between the agency and the defendant. *See Goldberg*, 538 F.3d at 291-92 & n.7.  The July 1 letter notified Nash that the USDA had documented regulatory food stamp violations at Goodfellas.  The letter explained Nash's right to reply to the charges, and Nash apparently availed himself of that right.  The USDA then issued its decision.  There thus was "an interaction" between Nash and the USDA, in which Nash had the ability "to participate in some meaningful way."  *Id.* at 291; *see United States v. Spencer*, 129 F.3d 246, 252 (2d Cir. 1997) (affirming application of enhancement where there was evidence of informal administrative process of negotiation, culminating in an agreement, and an informal decree).  Because there was a civil money penalty, and Nash agreed to pay the fine, the interaction also "led to a definite result."  *Goldberg*, 538 F.3d at 291; *see United States v. Malol*, 476 F.3d 1283, 1294 (11th Cir. 2007) ("The key issue is whether the order or process has been finalized."); *cf. Garcia*, 432 F. App'x at 330 (observing that state board did not fine the defendant for violating order prior to federal indictment).

What might be perceived as still missing is that Section 2B1.1(b)(9)(C) only applies if a defendant's offense involved "a violation of [a] prior, specific judicial or administrative order. . . . " We consider that requirement to be met, if somewhat short of its literal terms, by accepting the interpretation of the Guideline application note: the enhancement should be applied "if the defendant commits a fraud in contravention of a prior, official judicial or administrative *warning*, in the form of an order, injunction, decree, or process, to take or not to take a specified action."  § 2B1.1(b)(9)(C) cmt. n.7(C) (emphasis added).  The application note goes on to state that any "defendant who does not comply with

such a prior, official judicial or administrative warning demonstrates aggravated criminal intent and deserves additional punishment." *Id.* The background note similarly states that "[a] defendant who has been subject to civil or administrative proceedings for the same or similar fraudulent conduct demonstrates aggravated criminal intent and is deserving of additional punishment for not conforming with the requirements of judicial process or orders issued by federal, state, or local administrative agencies." *Id.* cmt. background. Although application of the enhancement "requires some specific directive that the defendant can defy," such a directive need not be only in the form of an injunction or a cease and desist order. *See Goldberg*, 538 F.3d at 292.

The July 9 letter found that Nash, through Goodfellas, was responsible for violating food stamp regulations on four occasions by accepting benefits in exchange for ineligible merchandise. The USDA fined him $14,742.00 and warned that failure to pay the fine would result in a six-month disqualification from SNAP. *Cf. United States v. Linville*, 10 F.3d 630, 632 (9th Cir. 1993) (not applying the enhancement where defendant was not "issued a formal order compelling statutory compliance"). The letter added that "[i]f it is determined that you accepted food stamp benefits after the effective date of disqualification, you *will* be subject to a severe monetary fine . . . and possible prosecution under applicable laws." (emphasis added). Finally, the letter made clear that imposition of the fine did not preclude further action in response to Nash's violations. The dissent contends that the letter was insufficient to warn Nash that future violations would result in enhanced penalties. While it is true that "no court of appeals has held that a mere warning letter, without more, can justify the enhancement," the fine (itself the result of a proceeding in which Nash participated) clearly "ordered [Nash] to stop" committing food stamp fraud. *Goldberg*, 538 F.3d at 291-92. Nash's understanding that continuation of his fraudulent conduct was illegal makes him exactly the type of defendant the

enhancement was intended to apply to, namely, one "who has been subject to civil or administrative proceedings for the same or similar fraudulent conduct" and thus has "demonstrate[d] aggravated criminal intent." § 2B1.1(b)(9)(C) cmt. background; *see* § 2B1.1(b)(9)(C) cmt. n. 7(C) (defendant's failure to comply with prior official administrative warning "demonstrates aggravated criminal intent and deserves additional punishment," and "defendant whose business previously was enjoined from selling a dangerous product, but who nonetheless engaged in fraudulent conduct to sell the product, is subject to this enhancement.").

Accordingly, the district court did not err in applying § 2B1.1(b)(9)(C) to enhance Nash's sentence.[4]  AFFIRMED.

---

[4] The *Goldberg* court arguably took a more demanding view of the language an order must contain.  There, an agency issued a notice stating that the defendant had engaged in prohibited conduct.  The notice provided him with the opportunity to attend a meeting with agency officials to present his views, and warned him that the next step would be to refer the matter to the Department of Justice for possible criminal prosecution.  538 F.3d at 291.  The Third Circuit considered whether the fact that the notice said "you are dispensing illegal drugs" was sufficient or whether the notice had "to say the word 'desist' on the same line to tell him to stop."  Applying what it admitted was "a highly formalistic interpretation," the court decided the order must say "stop."  *Id.* at 292 n.7.  "[I]f we are going to enhance a sentence based on a failure to comply with a directive, we do not think that it is too much to ask the directive be definitive in nature."  *Id.*

Our decision is not contrary to *Goldberg*.  While in *Goldberg* the agency notice merely stated the agency's belief that the defendant was engaging in illegal conduct, Nash actually was fined for his conduct after having the opportunity to contest the agency's determination.  *See id.* at 291 (enhancement could not be imposed "for no other reason than that the defendant continued to engage in certain conduct after the agency questioned its legality").  The July 9 letter amounted to a directive that Nash could comply with or defy.  Because Nash chose to defy the USDA's directive, the enhancement applies.

No. 12-30890

EMILIO M. GARZA, Circuit Judge, dissenting:

The district court erred at sentencing by imposing a two-level increase pursuant to § 2B1.1(b)(9)(C). Section 2B1.1(b)(9)(C) only applies if a defendant's offense involved "a violation of [a] prior, specific judicial or administrative order, injunction, decree, or process . . . ."

The USDA's July 9th letter stated, "We find that the violations cited in our [July 1st] charge letter occurred at your firm." In lieu of a six-month period of disqualification, the letter assessed a fine for Nash's SNAP violations and required Nash to pay his fine within fifteen days of receipt of the letter. The letter warned failure to pay the fine within fifteen days would result in a six-month disqualification from the SNAP program. The letter further stated that if "you are disqualified" and "it is determined you accepted food stamps benefits after the effective date of disqualification, you will be subject to a severe monetary fine . . . and possible prosecution under applicable laws." The letter informed Nash the USDA's determination that Nash committed the SNAP violations did not prevent other agencies or departments from taking action in response to his violations.

The government does not point to any order, injunction, decree or process the USDA imposed in its July 9th letter that Nash violated. The letter required Nash to pay a fine, and Nash paid that fine.

The majority makes much of a Guideline note that states the enhancement applies "if the defendant commits a fraud in contravention of a prior, official judicial or administrative *warning*, in the form of an order, injunction, decree, or process, to take or not to take a specified action." *Ante*, at 8 (quoting § 2B1.1(b)(9)(C) cmt. n.7(C)). The majority concludes that "the fine . . . clearly 'ordered [Nash] to stop' committing food stamp fraud." *Ante*, at 9. This is unconvincing. The letter warned only that failure to pay the fine would result

10

No. 12-30890

in disqualification from the SNAP program, and if disqualified, accepting food stamp benefits during that period of disqualification would result in enhanced penalties. The letter did not warn Nash to stop committing food stamp fraud. Additionally, even if the letter made such a warning, the Guideline note requires that the warning be "in the form of an order, injunction, decree, or process, to take or not to take a specified action." § 2B1.1(b)(9)(C) cmt. n.7(C). Here, in its July 9th letter, the USDA only required Nash to pay the fine within fifteen days of receipt of the letter. Nash paid the fine in a timely manner.[1]

Respectfully, I dissent.

---

[1] Moreover, it is unclear the USDA's letters to Nash constituted the type of official agency order or decree contemplated by the statute. *See United States v. Linville*, 10 F.3d 630, 632–33 (9th Cir. 1993) ("It is pellucid that there is a vast difference between ignoring prior decrees, orders and injunctions after being subjected to formal proceedings, and ignoring letters and the like, no matter how official they might look.")